* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Harris. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission modifies the Opinion and Award by Deputy Commissioner Harris.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
 3. The carrier liable on the risk is correctly named above. *Page 2 
4. Plaintiff's average weekly wage will be determined from an I.C. Form 22 Wage Chart to be provided by the defendants with supporting wage documentation.
5. Plaintiff sustained a compensable injury on March 9, 2001 arising out of and in the course of employment with defendant.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 51 years of age at the time of the hearing before the deputy commissioner and is a registered nurse. She began working with defendant in 1999 in its Lumberton Dialysis Center as a "team leader." In that position, prior to her March 9, 2001 fall, plaintiff typically worked 12-hour shifts, six days per week, then would be off for a full week.
2. On October 6, 2000, plaintiff underwent a total left hip replacement with Dr. Edward G. Lilly, III, an orthopedic surgeon then with Duke Medical Center. This surgery was not work-related. Plaintiff then went through a lengthy, painful rehabilitation process and was very much looking forward to returning to work and resuming her routine.
3. Plaintiff returned to work with defendant in the Lumberton Dialysis Center on February 28, 2001. Dr. Lilly recommended work restrictions for plaintiff of no heavy lifting, bending, squatting or stooping. Dr. Lilly also recommended that plaintiff alternate between sitting and standing for no longer than two hours with frequent ten-minute breaks.
4. On March 9, 2001, while working for defendant, plaintiff went to sit down in a chair. The chair was broken, and when plaintiff sat on it, it collapsed. Plaintiff fell to the floor and injured her left hip and lower back. *Page 3 
5. On or about September 5, 2001, plaintiff filed a Form 18, dated August 29, 2001, making a claim for an injury as set out in Paragraph 5 above. Defendants never filed a Form 60, 63 or 61. However, as noted in the Stipulations above, they agree that plaintiff sustained a compensable injury on March 9, 2001.
6. Plaintiff went to the emergency room at Cape Fear Valley Hospital on March 9, 2001 complaining of pain in her left hip and lower back. The emergency room physician's impression was that plaintiff had sustained a lumbar strain. He took plaintiff out of work for four days and placed her on bedrest.
7. On March 15, 2001, plaintiff returned to Dr. Lilly. Dr. Lilly diagnosed plaintiff with a contusion of the left hip and noted that plaintiff would need to progress from using crutches to independent ambulation over the following four weeks. As such, Dr. Lilly wrote plaintiff out of work for four weeks.
8. After her lengthy, painful rehabilitation from the hip surgery and the setback on March 9, 2001 that was causing her not to be able to resume her work routine, plaintiff began to feel like she did not want to be around others, and she spent much of her time at home lying on the sofa overwhelmed by negative thoughts.
9. On March 21, 2001, Dr. Lilly referred plaintiff back to her family physician for further treatment for her left hip condition. That same day, Gloria Jordan, a physician's assistant with plaintiff's family physician, recounted the history of plaintiff's left hip surgery and her fall at work, and she wrote, "This entire situation has caused (plaintiff) extreme anxiety and now to the point of becoming depressed." Ms. Jordan started plaintiff on anti-depressants and recommended that plaintiff begin psychological counseling immediately. *Page 4 
10. On or about April 4, 2001, defendants authorized 10 sessions for plaintiff with Deborah Atkinson, Ph.D., a psychologist with Carolina Psychological Associates in Fayetteville.
11. On April 16, 2001, Dr. Lilly noted that, with regard to plaintiff's physical condition, he anticipated that she could return to work on May 13, 2001.
12. Also on April 16, 2001, defendants wrote to Dr. Atkinson, stating that Dr. Lilly had released plaintiff to return to work as of May 13, 2001 and inquiring whether, in Dr. Atkinson's opinion, plaintiff would be emotionally ready to return to work on that date.
13. On April 30, 2001, Dr. Atkinson wrote that plaintiff could return to work on May 14, 2001 with a graduated return to an eight-hour day.
14. Plaintiff returned to work with defendant in the Lumberton Dialysis Center on May 14, 2001.
15. In response to defendants' June 18, 2001 letter, Dr. Lilly noted that any physical work restrictions that plaintiff retained at that time were related to her October 6, 2000 total left hip replacement and not to the March 9, 2001 fall. Dr. Lilly stated that plaintiff had reached maximum medical improvement (MMI) for the injuries she sustained in the March 9, 2001 fall. Dr. Lilly testified, the injuries plaintiff sustained in the March 9, 2001 fall, while relatively minor, did exacerbate her ongoing left hip problems. Dr. Lilly further testified, no further orthopedic treatment is necessary for plaintiff's March 9, 2001 injuries.
16. Following plaintiff's May 14, 2001 return to work, plaintiff continued to receive psychological treatment with Dr. Atkinson and psychiatric treatment with Dr. Susan G. Myers, a psychiatrist with Carolina Psychological Associates.
17. Dr. Myers diagnosed plaintiff with major depression. Dr. Myers testified that the injuries that plaintiff sustained in her March 9, 2001 fall were a direct causative factor for her *Page 5 
depression, which developed following the March 9, 2001 fall. Dr. Myers further testified that as of May 31, 2001, plaintiff was in full remission.
18. On September 7, 2001 plaintiff had a confrontation with a co-worker at the Lumberton Dialysis Center. Plaintiff again went out of work immediately following this incident. Dr. Myers testified that as plaintiff was free of depression as of May 31, 2001, this confrontation triggered a recurrence of depression.
19. On October 9, 2001, Dr. Myers wrote that plaintiff was still unable to work.
20. On January 23, 2002, Dr. Myers noted that plaintiff's depression was in full remission again and that plaintiff could return to work in an "ancillary nurse" position at the Fayetteville Kidney Center for 30 hours per week, with an increase in hours as plaintiff could tolerate.
21. In or about late January of 2002, plaintiff returned to work with defendant at defendant's Fayetteville Kidney Center.
22. On February 13, 2002, at defendants' request, plaintiff underwent an independent psychiatric evaluation with Dr. Moira F. Artigues. Dr. Artigues diagnosed plaintiff with major depression and stated that ongoing counseling and medications were appropriate for plaintiff. In a March 11, 2002 letter to defendants' adjustor, Dr. Artigues wrote, "In my opinion, (plaintiff's) current psychiatric treatment is causally related to her fall on 3/9/2001." However, Dr. Artigues was not plaintiff's treating physician, and the undersigned give greater weight to the testimony of Dr. Myers and Dr. Atkinson and plaintiff's medical records admitted into evidence.
23. On April 8, 2002, in response to defendants' letter, Dr. Myers noted that plaintiff had reported on February 28, 2002 that her new position was going well and that plaintiff's symptoms remained in full remission. *Page 6 
24. Throughout the second half of 2001 and the first half of 2002, defendants authorized ongoing psychological treatment for plaintiff with Dr. Atkinson in addition to the psychiatric treatment with Dr. Myers. On November 6, 2001, defendants filed a Form 25N with the Industrial Commission noting their assignment of a rehabilitation professional to "assist (plaintiff) w/ her 3/9/01 hip injury subsequent psychological problems. . ."
25. On June 11, 2002, Dr. Atkinson noted that plaintiff had agreed to discontinue psychological therapy as of that date but that plaintiff would continue psychiatric treatment with Dr. Myers. Dr. Atkinson noted that she was available as needed for plaintiff.
26. Defendants stopped paying for plaintiff's psychiatric and psychological treatment in mid-2002.
27. Since mid-2002, plaintiff has continued to treat with Dr. Myers.
28. In November of 2003, after plaintiff had a confrontation with a physician at work, Dr. Myers noted an increase in plaintiff's anxiety and referred her for therapy with Dennis Sternlight, Ph.D., a psychologist with Carolina Psychological Associates, to help plaintiff deal with her anxiety.
29. Plaintiff had several sessions with Dr. Sternlight to address her anxiety. As of August 10, 2005, Dr. Myers again found plaintiff's symptoms to be in full remission. Plaintiff has remained on anti-depressants since starting them in March of 2001.
30. Plaintiff remains employed with defendant at its Fayetteville Kidney Center working about 30 hours per week.
31. The undersigned find that plaintiff's depression developed immediately following her March 9, 2001 fall at work and was a direct and natural result of her admittedly compensable *Page 7 
left hip and back injuries through May 31, 2001. As such, it is found that plaintiff's depression from March 9, 2001 until May 31, 2001 is a compensable condition in this claim.
32. The Form 22 provided by defendants shows that plaintiff earned $23,639.69 for 20 and 4/7 weeks of work with defendant in the 52-week period preceding her March 9, 2001 fall. Therefore, plaintiff's average weekly wage is $1,149.15, and her compensation rate is $620.00, the maximum compensation rate for 2001.
33. Plaintiff was totally disabled from March 9, 2001 through May 13, 2001, as plaintiff has shown that, as a consequence of her compensable left hip and back injuries and her compensable depression, she was incapable of work in any employment during that period. Plaintiff has failed to prove that she was disabled after May 13, 2001 as a result of her March 9, 2001 compensable injury.
34. Plaintiff testified that she received "weekly checks" during the period from March 9, 2001 through May 13, 2001. There is no evidence in the record as to the amount of those checks or their source. The "printout of benefits paid" provided by defendants as Stipulated Exhibit 5 following the hearing does not show any disability compensation payments paid to plaintiff by defendants during this period.
35. Plaintiff's psychiatric treatment with Dr. Myers from the date of plaintiff's compensable injury until May 31, 2001 when Dr. Myers indicated plaintiff was in full remission has been reasonably required to effect a cure, provide relief and/or lessen the period of disability related to plaintiff's compensable depression. However, plaintiff's treatment after May 31, 2001 was not related to plaintiff's compensable depression but rather was related to a recurrence in plaintiff's anxiety level occasioned by a non-compensable confrontation. *Page 8 
36. On January 8, 2003, plaintiff, through her previous counsel, filed a Form 33 Request for Hearing seeking, among other things, payment of indemnity compensation and for medical treatment. On November 24, 2004, plaintiff, again through her previous counsel, filed another Form 33 again seeking these remedies. On June 27, 2005, through her current counsel, plaintiff filed another Form 33, specifically mentioning her "psychological disorder" for the first time and showing "on or about 3/9/01" as the date of injury. After having filed incomplete Forms 33R in response to plaintiff's first two Forms 33, defendants did not file a Form 33R in response to plaintiff's last Form 33.
37. According to Stipulated Exhibit 5, defendants made their last payment for medical treatment in this claim on March 19, 2003.
38. Defendants have not defended this matter without reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff's depression following her March 9, 2001 fall through May 31, 2001 was the direct and natural result of the injuries plaintiff sustained in said fall and thus constitutes a compensable injury by accident. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to temporary total disability compensation for the periods from March 9, 2001 through May 13, 2001. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants pay for her treatment with Dr. Myers from March 9, 2001 through May 31, 2001 when Dr. Myers indicated that plaintiff was in full remission. N.C. Gen. Stat. § 97-25. *Page 9 
4. Plaintiff's claim for depression was timely filed pursuant to the provisions of N.C. Gen. Stat. § 97-24(a), as plaintiff timely filed a Form 18 alleging her March 9, 2001 left hip and lower back injuries from which plaintiff's depression was a direct and natural result.
5. Defendants failed to comply with N.C. Gen. Stat. § 97-18 by failing to file either a Form 60, 61, or 63.
6. Plaintiff is not entitled to an attorney's fee pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney's fee provision set forth below, defendants shall pay to plaintiff, in a lump sum, temporary total disability compensation in the amount of $620.00 per week for the periods from March 9, 2001 through May 13, 2001. For the period from March 9, 2001 through May 13, 2001, defendants shall add a ten percent penalty pursuant to N.C. Gen. Stat. § 97-18(g). If defendants have already paid plaintiff temporary total disability compensation for the period from March 9, 2001 through May 13, 2001, then they are excused from having to pay the penalty. If plaintiff was paid at or above $620.00 per week during the period from March 9, 2001 through May 13, 2001 from a source besides workers' compensation, such as salary continuation or short-term disability compensation fully funded by defendant, then defendants shall get full credit for said payments pursuant to N.C. Gen. Stat. § 97-42.
2. Plaintiff's attorney is entitled to 25% of the compensation due plaintiff. This award of attorney fees shall come out of the amounts due plaintiff and are not in addition to plaintiff's compensation. *Page 10 
3. Defendants shall pay for the treatment plaintiff has undergone with Dr. Myers from the date of injury through May 31, 2001, including but not limited to prescription medications and mileage. To the extent that plaintiff and/or any third-party payor has paid for any such treatment and/or medications, defendants shall reimburse plaintiff and/or such payor in full for said payments. Defendants shall pay plaintiff allowable mileage upon plaintiff's presentation of properly completed Forms 25T. Defendants are not required to pay for plaintiff's medical treatment after May 31, 2001.
4. Pursuant to Rule 802, Defendants are hereby fined in the amount of $250.00 for their failure to file a Form 60, 61 or 63 in this case. Also pursuant to Rule 802, Defendants are hereby fined in the amount of $250.00 for their failure to file a Form 33R in response to Plaintiff's last Form 33. These fines totaling $500.00 are to be paid directly to the Industrial Commission.
5. Defendants shall pay the costs.
This the 10th day of April 2007.
S/_______________
BUCK LATTIMORE
CHAIRMAN
CONCURRING:
S/_______________
PAMELA T. YOUNG
 COMMISSIONER *Page 11 
S/_______________
DIANNE C. SELLERS
 COMMISSIONER *Page 1